FILED

IN THE UNITED STATES DISTRICT COURT

00 MAR 21 PM 1:56

FOR THE NORTHERN DISTRICT OF ALABAMA

U.S. DISTRICT COURT
N.D. OF ALABAMA

NORTHEASTERN DIVISION

LINDA JO McCONNELL, et al.,      )
                                 )
         Plaintiffs,             )
                                 )
vs.                              )    Case No. CV 86-TMP-5024-NE
                                 )
ALABAMA FEDERAL SAVINGS          )
AND LOAN ASSOCIATION,            )
                                 )
         Defendant.              )

ENTERED

MAR 2 1 2000

MEMORANDUM OPINION

This action is before the court[1] on the defendant's motion for summary judgment, filed May 28, 1999, and reiterated in a motion filed June 23, 1999.  There has ben extensive briefing and argument on the motion, and it has been supported and opposed by voluminous exhibits.  The thirty-two opt-out plaintiffs[2] filed responses to the motion on June 8, June 23, and July 30, 1999.

_____

[1] The parties have consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] The actual number of plaintiffs who decided to opt-out of the benefits of the class settlement has fluctuated since 1988, but it now appears agreed that there are thirty-two such plaintiffs presently before the court.

1

Background

It is not the court's desire or purpose to re-map the long, regrettable history of this case, a history more than full of unfortunate delays.   Nevertheless, a sketch of the history is helpful to put context to the issues joined today.

Originally filed in January 1986 on behalf of an individual plaintiff, Linda Jo McConnell, and a class of all women employees of Alabama Federal, the initial complaint focused on the allegation that the defendant had a practice of discriminatorily denying promotions to its female employees in violation of Title VII, 42 U.S.C. § 2000e.   Settlement negotiations ultimately led to a proposed agreement to deal with McConnell's personal claims as well as providing injunctive relief to class members.   The court preliminarily approved the settlement on November 23, 1987, and set a fairness hearing after appropriate notice was mailed to all class members.   That hearing occurred on January 27, 1988, and on February 23, 1988, the court approved the settlement and entered it as a consent decree (Doc. 97).   Nothing in the decree indicates that Alabama Federal admitted liability nor does the decree make an explicit finding of liability.

2

The consent degree provided for the possibility of class members "opting out" of the class settlement, stating in paragraph 6:

> 6.  Any member of the class may request to opt-out or be excluded from the settlement by filing an "Opt-Out Form" (attached as Appendix A) and mailing it to the Clerk's Office after the final approval of the Consent Decree by the Court.  All claims of class members who do not request to opt-out from the settlement will be deemed to be conclusively resolved through the procedures and remedies set forth in this Consent Decree, and such class members who receive notice of the Consent Decree prior to the hearing on final approval of the settlement will be forever barred from pursuing any claim against the defendant for any sexual discrimination occurring prior to the date of the final approval of the Consent Decree. Any person who opts-out or excludes herself from the settlement shall present their claims in accordance with the terms and conditions set forth in Holmes v Continental Can Co., 706 F.2d 1144, 1160 (11th Cir. 1983) and Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1220 (5th Cir. 1978).

While a number of women filed opt-out forms by the May 1, 1988, deadline, it is now agreed by the parties that the following women are the proper opt-out plaintiffs remaining before the court:

| | |
|---|---|
| Marion Calvo | Joan Lacy Gargus |
| Sherry Diane Cobble | Dorothy Gurley |
| Rosalind Dowdell Coleman | Donna F. Gillespie Hatoway |
| Jeanette Dorminey | Mary Hill |
| Brenda Gail Cole Estes | Beverly Iturbe |
| Gail Figg | Marilyn Jackson |

| | |
|---|---|
| Phyllis Lawson | Jean Bryant Piersol |
| Donna LeCroy | Laura H. Posey |
| Kelli Leslie | Betty Hodges Putman |
| Alys G. Liddy | Kathryn Robertson |
| Nancy J. Martin | Rachel Alice Shanyfelt |
| Sharon Wayne McQueen | Lil Abercrombie Skelton |
| Leda B. Reynolds Mims | Meredith Moody Smith |
| Pat Nelson | Shirley Steadham |
| Yolanda Nunley | Shirley Williams |
| Carolyn Pate | Carol M. Woodruff |

In a report and recommendation filed January 8, 1998, and subsequently adopted by the district court before the parties consented to magistrate-judge jurisdiction, the court had the opportunity to analyze paragraph 6 of the consent decree and its effect on opt-out plaintiffs. It was determined that the negotiated consent decree was not intended to be a confession or finding of liability, but did preserve the right of opt-out plaintiffs to pursue their individual Title VII claims **in this action** and without the necessity of filing separate, new actions. The court noted that the preservation of the right to proceed in this action had the valuable benefits of enabling the plaintiffs to utilize the "single-filing" rule and the tolling of the statute of limitations by the filing of this action.

4

<u>Current Summary Judgment Motion</u>

Defendant's current motion for summary judgment seeks dismissal of the claims of the opt-out plaintiffs on several grounds, including failure of the plaintiffs to meet the prerequisites for filing a Title VII action and their separate failures to present a sufficient *prima facie* case of discrimination.  In particular, defendant argues that plaintiffs cannot benefit from the "single-filing" rule because the only EEOC charge of discrimination ever filed in this action was that by the original plaintiff, Linda McConnell, which never itself suggested that it dealt with a claim of discrimination by anyone other than McConnell herself.  The EEOC charge did not suggest that it was asserting the rights of a larger class of female employees. Further, defendant argues that many of the claims now asserted by the opt-out plaintiffs are not of the same type or from the same time-frame as that set out in McConnell's original charge.


A.  <u>Prerequisites To Filing Suit</u>

The statutory prerequisites to filing suit under Title VII are well-known: a charge of discrimination must be filed with the Equal

Employment Opportunity Commission within 180 days of the last discriminatory act by the employer.  Once either the EEOC issues a right-to-sue letter or 180 days from the filing elapses, the plaintiff may commence suit in a court of competent jurisdiction. If a right-to-sue letter is issued, suit must be commenced within 90 days of delivery of the letter to the employee, or suit will be barred.  While these procedures are a statutory prerequisite to suit, they are not jurisdictional, Forehand v. Florida State Hospital at Chattahoochee, 89 F.3d 1562, 1567 (11th Cir. 1996) (citing Pinkard v. Pullman-Standard, 678 F.2d 1211, 1215 (5th Cir., Unit B, 1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983)), and are subject to equitable modification or waiver.

The issue in this case is whether any of these opt-out plaintiffs, none of whom filed an EEOC charge of discrimination, can meet that prerequisite to filing suit.  Defendant argues, of course, that they cannot establish that prerequisite to suit because they cannot fit within "single-filing" ruling in order to benefit from the EEOC charge filed by the original named plaintiff, Linda Jo McConnell.  Plaintiff's argue that defendant has waived

6

the EEOC filing requirement as a precondition to suit.  Insofar as the present claims by plaintiffs do not involve discharge claims, the court agrees that the EEOC-filing requirement has been waived.

The critical factor indicating a waiver of the EEOC filing requirement in this case is the negotiation of the consent decree and, in particular, its contemplation that opt-out plaintiffs would be allowed to present their individual claims in this action. Paragraph 6 of the consent decree, already the subject of much dispute, clearly allows opt-out plaintiffs to "present their claims in accordance with the terms and conditions set forth in" Holmes and Pettway.  Nothing in this language suggests that defendant intended to preserve the argument that opt-out plaintiffs failed to meet the EEOC filing requirement as a prerequisite to the presentation of their claims in this action.  Indeed, the negotiation of the consent decree as to the class strongly implies that defendant either believed McConnell's filing was adequate to cover all class members under the "single-filing" rule or that it wished to waive that requirement in order to enjoy the benefits of a class-wide settlement.  In either event, no plaintiff, whether part of the class settlement or an opt-out, was informed in the

7

consent decree or the notice of the right to opt-out that the EEOC filing requirement was still an issue.  Thus, the defendant either waived that requirement or is now equitably estopped from raising it this late in the day.  Having concluded that the EEOC filing requirement was waived or is estopped, the court is not required to consider whether the "single-filing" rule does or does not cover these plaintiffs.

This holding is not inconsistent with the court's earlier rejection of the opt-out plaintiffs' claims based on discharge or termination of employment.  The critical difference between the case in its present posture and at the time of the dismissal of all discharge claims lay in the language of the consent decree itself. As pointed out in the court's earlier Report and Recommendation, the consent decree certified a class of plaintiffs

> defined to include permanently employed women as of April 23, 1983, who were "adversely affected in hiring, promotions, transfers, job assignments, pay, and other terms and conditions of work because of their sex." Missing, of course, are discharge, discipline, or dismissal.  Insofar as the opt-out plaintiffs assert discharge or termination claims alone, they were never part of the class and the opt-out procedure did not allow them to assert such a claim **in this action**.  That procedure was available only to members of the class who elected to become excluded from it.

8

<u>Report and Recommendation</u>, dated January 8, 1998, footnote 17. Unlike the claims expressly recognized in the consent decree dealing with "promotions, transfers, job assignments, pay, and other terms and conditions of work," discharge and termination claims were never preserved or recognized by the parties as claims litigable in this action. They were never part of the class pleadings and never part of the negotiation leading to the consent decree. Thus, it cannot be said that defendant waived the EEOC filing requirement with respect to discharge and termination claims. The other employment claims relating to promotion, transfer, job assignments, pay, and other terms and conditions **were** expressly preserved and negotiated in the consent decree, and the agreement in paragraph 6 of the consent decree that they can present their claims in this action, absent some affirmative reservation of the EEOC filing requirement as a prerequisite to opt-out plaintiffs presenting **those** claims, waived the filing requirement. Clearly, no plaintiff but McConnell had filed an EEOC charge, yet defendant never raised that as an obstacle to the class settlement nor as an obstacle to the opt-out plaintiffs. By negotiating paragraph 6 of the consent decree, therefore, defendant

9

waived the procedural prerequisite to the presentation of the opt-out plaintiffs' claims.   Defendant is not entitled to summary judgment on this ground.


B.   <u>Merits of Individual Claims</u>

Defendant also has moved for summary judgment with respect to the individual claim by each opt-out plaintiff.   As discussed in the court's earlier Report and Recommendation, the consent decree does establish any presumption of liability in favor of these plaintiffs because it was neither a confession of liability by the defendant nor a finding of liability by the court.   This reading of the consent decree has been further buttressed recently by the Eleventh Circuit's decision in <u>Reynolds v. Roberts</u>, ___ F.3d ___, 2000 WL 123788 (11th Cir. 2000).   There, the court of appeals rejected the assertion that a negotiated consent decree in a civil rights employment case constituted a finding or concession of liability by the defendant that relieved the individual class members of the obligation to prove that they were subjected to illegal discrimination.   The court of appeals explained:

10

> ...[I]n order to obtain individual relief, the members of
> the three classes must prove that the Department
> discriminated against them on account of their race when
> it failed to hire or promote them ... .   A member will
> establish a *prima facie* case of racial discrimination if
> he or she satisfies the *McDonnell Douglas* test.   If it
> appears that, **as a matter of policy or practice,** the
> Department's hiring or promotion decisions were based on
> race, a class member may rely on such fact in countering
> the Department's lawful excuse for not hiring or
> promoting the member.

Id. at _____ (bolding added).  This case confirms that, unlike the

Pettway case, in which there had been a full trial and judicial

finding of systemic discrimination, a negotiated consent decree

does not carry a presumption of liability or discrimination.

If anything, the instant case is even further from Pettway.

Here, not only has there been no judicial finding of discrimination

in favor of a class, these plaintiffs have opted to disassociate

themselves from the class.   Unlike either Pettway or Reynolds,

these plaintiffs opted out of the class settlement, choosing to go

their individual ways.   Thus, the assessment of their individual

claims is not merely a "Stage II" proceeding, as they argue, in

which they need only prove their damages; rather, it involves the

resolution of thirty-two distinct claims of employment

discrimination.   As such, each plaintiff must prove her claim by establishing a *prima facie* case under the <u>McDonnell Douglas</u> framework.   The only thing unique about this case is that thirty-two separate claims have been collected into one lawsuit. Nevertheless, each plaintiff must prove her own distinct claim.

Under the <u>McDonnell Douglas</u> framework, the plaintiff is first required to set out a *prima facie* case of discrimination by a preponderance of the evidence.   Once she has done so, a burden of production shifts to the employer to articulate a legitimate, non-discriminatory explanation for the allegedly discriminatory act or decision.   As the courts have repeated, this is an exceedingly light burden. <u>See</u> <u>Turnes v. AmSouth Bank, N.A.</u>, <u>supra</u>, at 1061 (<u>quoting</u> <u>Pearlman v. Johnson Products, Inc.</u>, 698 F.2d 1138, 1142 (11th Cir. 1983)).   To meet this burden, "the employer need [only] offer admissible evidence sufficient to raise a genuine issue of fact as to whether it had a legitimate reason" for its adverse act or decision concerning the plaintiff. <u>Turnes v. AmSouth Bank</u>, <u>supra</u>.   Once the employer carries this burden of production, "the <u>McDonnell Douglas</u> framework, with its presumptions and burdens, drops out of the case, and the trier of fact proceeds to decide the

12

ultimate issue in the case: whether the plaintiff has proven that the employer intentionally discriminated against him because of his race." Turnes v. AmSouth Bank, supra (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed. 2d 407 (1993)); see Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir. 1997).

Returning to the first step in the framework, the plaintiff's initial burden of establishing a *prima facie* case of discrimination requires her to show: (1) that she is a member of a protected minority; (2) that she was qualified for the particular job at issue; (3) that she suffered an adverse job action or decision; and (4) that equally or less qualified people who were not members of the protected class received the job benefit denied the plaintiff.[3] The burden always remains on the plaintiff, however, to show purposeful, intentional discrimination by defendant.  In opposition to a motion for summary judgment, the plaintiff must present

---

[3]  The particular formulation of the *prima facie* showing of sex discrimination depends upon the nature of the employment decision being challenged by the plaintiff.  For example, if she complains about being denied a promotion, she must be qualified for the position to which she seeks promotion, she must be denied that promotion, and a male person must be awarded the position for which the plaintiff sought promotion.

13

substantial evidence on each element of a *prima facie* case and, if the employer articulates a non-discriminatory reason for the job decision, evidence that undermines the credibility of the employer's articulated reason.  If the plaintiff either fails to establish any element of the *prima facie* case or fails to proffer sufficient evidence to create an issue of fact concerning the credibility of the employer's articulated reason, the employer is entitled to summary judgment.[4]

The defendant's motion for summary judgment points out that a number of plaintiffs are unable to establish one or more of the essential elements of a Title VII *prima facie* case of discrimination.  In response to the motion, only plaintiffs Gail C. Figg, Joan P. Lacy, Alys G. Liddy, Sharon Wayne McQueen, Jean Bryant Piersol, Kathryn D. Robertson, Betty Hodges Putman, and Meredith C. Smith filed their own individual affidavits addressing the particular factual circumstances of their separate claims.[5]

---

[4]   These are not necessarily distinct bodies of evidence. Evidence offered to make the *prima facie* case may be sufficient without more to also undermine the credibility of the employer's articulated reason.

[5]   A response to the motion for summary judgement was filed in behalf of all thirty-two opt-out plaintiffs, but only the

14

Thus, the remaining opt-out plaintiffs, with the exception of Mary Hill and Shirley Williams,[6] have offered no evidence to create a fact dispute with respect to the lack of evidence supporting a *prima facie* showing of discrimination.  The conclusory statements made in the affidavits that less-qualified males were promoted over females and that a "double standard" existed in the defendant's organization favoring men over women are unsupported by specific factual evidence or statistical analysis, except with respect to the particular plaintiffs who offered affidavits to describe their personal experiences.  As such, those statements also fail to create a factual dispute sufficient to defeat summary judgment on the claims of those plaintiffs who have not filed affidavits with respect to their personal experiences.

The unrefuted evidence relating to the claims of most of the opt-out plaintiffs is set out below.

---

plaintiffs named in text above filed affidavits describing the circumstances of the specific claims.  To the extent the affidavits support the claims of other plaintiffs who did not file an affidavit, the court will address that below.

[6] Although neither Mary Hill nor Shirley Williams filed affidavits, the circumstances of their claims were described in the affidavits of Gail C. Figg and Sharon Wayne McQueen.

1.  <u>Marian Calvo</u> — Hired as a teller on February 21, 1985, she worked about eighteen months, until August 4, 1986, when she was terminated for tardiness and excessive absences.  In April 1986, plaintiff had been counseled for excessive absences.  Just before she was terminated, she learned that a position had opened in the bookkeeping department, and she contacted management to express interest in it.  Rather than being promoted, she was terminated after another instance of tardiness.  Plaintiff was not qualified for the promotion to the bookkeeping department due to her poor work attendance, which, in fact, resulted in her dismissal. Indeed, the position in the bookkeeping department was not filled until after her discharge.  (<u>See</u> Marian Calvo Deposition).

Plaintiff also claims that she was discriminatorily denied pay equal to that of comparable male employees.  The only comparator she identified, however, was Percy Phillips, a loan officer.  She has offered no evidence that her job as a teller involved comparable duties and responsibilities to those of a loan officer. Merely showing that she was paid less than a loan officer, without showing a substantial similarity of job duties and responsibilities, fails to prove a discriminatory pay disparity.

Defendant is entitled to summary judgment with respect to all of Marian Calvo's claims.

2.  <u>Sherry Dianne Cobble</u> — Employed as a switchboard operator on February 18, 1985, plaintiff worked only seven months before leaving her employment on September 30, 1985.  Although she claims to have been denied promotions to a secretarial position and a loan processor clerk's position, she admits that both of these positions were filled by women, thus failing to establish the essential *prima facie* element that the position was filled by someone not in the protected class of women.  Further, defendant has offered evidence that her work performance was not satisfactory, and plaintiff has failed to offer any evidence that this articulated reason for not promoting her is mere pretext.

Insofar as she presents a claim for discriminatory denial of equal pay under Title VII, the only comparator she has identified was Scott Wedge, a summer intern who was paid **less** that she.  This fails to establish a discriminatory pay disparity.

Defendant is entitled to summary judgment with respect to all of Sherry Dianne Cobble's claims under Title VII.

17

3.   <u>Rosalind Dowdell Coleman</u> — Plaintiff was employed by defendant from February 1976 to May 1985, when she voluntarily resigned.   Initially employed as a teller while still in school, she was later promoted to savings counselor and then, in 1985, to branch manager.   She asserts that she was denied promotion to the position of consumer loan coordinator in February 1984, a position ultimately given to Tom Allen.   She was unaware of the availability of the position because it was not posted and, consequently, did not apply for it.   Plaintiff admits that she had no experience in making or awarding consumer loans at the time the position was awarded to Tom Allen.   Allen, on the other hand, had worked for four years as an assistant manager/loan officer for Norwest Financial, in which he had gained experience making and servicing consumer loans.   Thus, plaintiff has failed to offer evidence creating an issue of fact concerning defendant's contention that Allen was the better qualified of the two, based on prior consumer loan experience.   Absent some evidence undermining the credibility of this assertion, plaintiff has failed to show it to be a pretext.

Although she has asserted a claim of pay discrimination, she has identified no male comparators, performing substantially the

same work as she but being paid more.  Thus, there is no evidence
of pay discrimination affecting her.   Defendant is entitled to
summary judgment on all of plaintiff's claims.


    4.  <u>Jeanette Dorminey</u> — Plaintiff was employed by defendant as
a marketing secretary in February 1982, later being promoted to
personnel assistant and then secretary to the Western Regional
Manager.  She was laid off from that position on October 1, 1987,
due to a reduction in force.  She claims to have been subjected to
sexual harassment, discriminatorily denied a transfer to another
position, and denied pay equal to that of similarly placed males.

    Plaintiff's deposition testimony suggests that she was
subjected to sexual harassment by her boss, Tom Siemers.  It does
not, however, contain any specific instances of sexual demands,
jokes, hints, touching, or any of the other ordinary indicia of
sexual harassment.  Her subjective assessment of harassment is not
enough to establish as a claim under Title VII that the harassment
was severe and pervasive enough to alter her working conditions.
Specific factual evidence, missing here, is necessary to do that.
Thus, a claim grounded on sexual harassment fails.

19

Plaintiff admits, further, that she never applied for a transfer to another position after her secretarial position was eliminated in corporate re-structuring. She has identified no comparably-placed male employees who were given transfers after their positions were eliminated. Thus, she has failed to present any evidence from which a rational trier of fact could conclude that she was denied a transfer due to her sex.

She also complains that she was discriminatorily denied pay equal to comparable male employees, specifically John Marbury, who was employed as a loan originator, not a secretary. While both may have been clerical in nature, Marbury's position required him to interact with loan customers and solicit loan business. Because his duties were substantially different from those of plaintiff, a pay differential between them fails to show pay discrimination.

Defendant is entitled to summary judgment on all of plaintiff's claims.


5.   <u>Brenda Gail Estes Cole</u> — Plaintiff worked for the defendant from October 1985 to June 1986, as a receptionist/utility clerk and claims that she was discriminatorily denied a promotion

20

to personnel assistant.  Her job duties included acting as a relief receptionist, doing overflow typing, and otherwise running errands and assisting in the Personnel Department.  In May 1986, she expressed interest in a **posted** position of personnel assistant, which consisted principally of being assistant to Personnel Director Cathy Gettys.  Plaintiff never formally applied for the position, but spoke to Gettys and other management personnel about it.  She was not given the position and, in fact, was later terminated from employment on June 30, 1986, following several reprimands and being counseled concerning her attitude, her relationship with other employees, and a practical joke that caused public embarrassment to the defendant.  The position of personnel assistant was filled by a male after plaintiff was terminated from her job as a receptionist.[7]

Plaintiff has offered no evidence raising a genuine issue about the truth of defendant's reason for not promoting her to

---

[7] Defendant has offered evidence to the effect that the personnel assistant position was not filled until almost six months after plaintiff was terminated and that it was filled by a female, Terri Kirby.  Because plaintiff testified that it was filled by a male, although she could not remember the name of the employee, however, the court must accept that evidence as true for summary judgment purposes.

personnel assistant. The decision-maker, Gettys, was well aware of plaintiff's earlier disciplinary problems. She clearly regarded plaintiff unqualified for the position because of those problems. Absent some evidence indicating that this reason was mere pretext for sex discrimination, plaintiff has failed to rebut defendant's showing for summary judgment.

Plaintiff has identified Scott Wedge as a comparable male employee who was paid more than she for substantially the same work. The evidence is undisputed, however, that Wedge was paid the **same** wage as plaintiff. Thus, plaintiff was not discriminatorily denied an equal wage due to sex.

Defendant is entitled to summary judgment on all of plaintiff Coles's claims.


6. <u>Dorothy Gurley</u> — Plaintiff first became employed with defendant in 1973 as a teller, but had worked previously in the banking industry for 18 years, some as an assistant manager. By 1975, she was promoted to branch manager of the Oak Park branch of defendant. She remained in that position until she voluntarily resigned in August 1985. She complains that in 1978 she was

22

discriminatorily denied a promotion to consumer loan coordinator, a position for which Percy Phillips was hired and which was responsible for approving consumer loans in amounts greater than that authorized for branch managers to approve.  Plaintiff points out that she was experienced as a branch manager and in making consumer loans, and, thus, was qualified for this position.[8]

Plaintiff has made a *prima facie* showing of liability as to the failure of defendant's predecessor to promote her to consumer loan coordinator rather than Percy Phillips.  Although she never applied for the position or even expressed an interest to anyone in management, the consumer loan coordinator job was not posted or advertised and she was unaware of the opening until after Phillips was hired.  But simply because there is no evidence that management

_____

[8]  Defendant makes the argument in relation to the claims of several plaintiffs that accrued prior to the April 1, 1982, that the defendant, Alabama Federal, was not their employer at the time the claims accrued.  Of course, with the merger of four savings and loan associations, stock among the various participants was exchanged to create the new entity.  Any liability any of the predecessor entities might have had continued over to the new entity under the so-called "successor liability" doctrine.  See Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451 (11th Cir. 1985).

23

was aware of her interest in promotion opportunities[9] does not mean that there is no evidence that the decision to hire Phillips was motivated by any discriminatory intent. The failure of defendant's predecessor to post job openings and make them known to female employees or applicants may well evidence a discriminatory animus against women. She may well have been a victim of discrimination even though no one in management was aware that she wished to be considered because management sought to restrict the ability of females to discover and apply for job openings in management. The evidence at this point simply fails to show defendant's entitlement to judgment as a matter of law.

Plaintiff also makes a claim for pay discrimination, asserting that she should have been paid comparably to Ken Long, a Remote Office Branch Manager, and Larry Mitchell, a loan officer. Defendant responded that the job duties and responsibilities of the

---

[9] A *prima facie* showing of promotion discrimination requires "(1) that she is a member of a protected minority; (2) that she was qualified **and applied** for the promotion; (3) that she was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted. Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)." Taylor v. Runyon, 175 F.3d 861, 865 (11th Cir. 1999).

24

male employees were substantially different from those of plaintiff, so that a pay differential was not discriminatory. Defendant argues that, under its hierarchy of managers, a remote office branch manager had more responsibility that a full-service branch manager, such as plaintiff.  The differences between the positions, however, were more a matter of degree than kind.  Both types of managers were responsible to some degree for cultivating business, approving loans, and otherwise operating the branch bank. The differences were not so clear cut that the court can conclude as a matter of law that the positions were not substantially similar.  Thus, defendant has failed to carry its initial summary judgment burden of proving its entitlement to judgment as a matter of law on this claim.

Defendant's motion for summary judgment is due to be denied on this plaintiff's claims.


7. <u>Donna Franklin Hatoway</u> — Plaintiff was initially hired on February 27, 1984, as NOW Accounts Clerk.  She continued in that position, receiving pay raises until November 1, 1985, when she became a Consumer Loan Secretary, where she remained until she

25

resigned her employment on April 30, 1986.  As a consumer loan secretary, plaintiff took loan applications, completed loan paperwork, closed loans, and cut checks.  She did not have authority to approve a loan application.  That was done by the loan officer, Percy Phillips until his resignation in January 1986. During an approximate four-month period in early 1986, after Phillips' resignation, plaintiff was the only employee working in the consumer loan department, doing everything but approving loans. In early April 1986, a new loan officer, Darlene Jackson, was hired and placed over plaintiff.  Plaintiff was instructed to train the new officer.  Plaintiff resigned her employment at the end of April because she resented not being promoted to loan officer position given to Darlene Jackson, even though plaintiff was more qualified and experienced.

This promotion claim fails because an essential element of a *prima facie* showing by the plaintiff is that the position she sought to fill was filled by someone not in the protected class of women.  Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989); Taylor v. Runyon, 175 F.3d 861, 865 (11th Cir. 1999).  In fact, the

26

loan officer position she sought was filled by a woman, Darlene Jackson.  Clearly, plaintiff was not denied the position due to sex discrimination, and she is unable to make a *prima facie* showing on this claim.  Defendant is entitled to summary judgment on this claim.

Plaintiff also claims that she was discriminatorily denied pay equal to that of Percy Phillips, the loan officer who supervised her work as a consumer loan secretary.  She contends that she performed substantially the same work as he after his resignation, but was denied pay equal to his.  A key difference in their job responsibilities, acknowledged by plaintiff in her deposition, was that she lacked loan approval authority.  While true that she took loan applications, completed loan paperwork, closed loans, and cut checks, she always had to seek higher authority for the approval of loans.  That approval came from Phillips prior to his resignation and, then, from other officers of the bank.  Perhaps the essence of the difference between a loan officer and loan secretary is loan approval authority.  Thus, plaintiff did not perform substantially the same work as a loan officer, because she never bore the responsibility of approving loans.  Because the work she performed

was not substantially similar to Phillips' work, plaintiff has failed to present evidence that the pay differential between them was the product of illegal sex discrimination.

Plaintiff also claims pay discrimination because she was not paid the same as John Adams, a mortgage loan officer, and Philip Holbdy, a loan servicing clerk. Clearly, for reasons similar to those already discussed, plaintiff's work as a consumer loan secretary was not substantially similarly to that of a mortgage loan officer. Indeed, although she was a consumer loan secretary, plaintiff had no experience in mortgage lending. Similarly, the loan servicing clerk dealt with post-closing, mortgage loan administration, maintaining records, assisting real estate agents, and resolving escrow problems. None of these duties was substantially similar to plaintiff's work in preparing consumer loan papers. Thus, plaintiff has failed to show sufficient similarity between her employment and that of the comparators to warrant an inference of sex discrimination in pay.

Defendant is entitled to summary judgment on all claims by this plaintiff.

28

8.   Beverly Iturbe — This plaintiff was first hired by defendant as a teller in 1975. She received a promotion to branch manager in 1978, before being demoted to assistant branch manager in 1990. She was further demoted to banking representative II in August 1991, before resigning six days later on August 12, 1991.

Plaintiff claims that she was discriminatorily denied a promotion to a loan closer position. She admits, however, that job vacancies were posted or made known to interested employees as early as 1982, yet she never applied for any promotion. Without evidence that plaintiff applied for a position and was denied it in favor of a male, she cannot establish a *prima facie* showing of discrimination.   Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989);  Taylor v. Runyon, 175 F.3d 861, 865 (11th Cir. 1999).

Plaintiff also complains that she was not paid comparably to male branch managers. In her deposition, however, she fails to identify any specific male branch manager as being paid more than she. Rather, she acknowledged only that she had "heard" that male branch managers received better pay and benefits. This is insufficient to create an issue of fact for trial. Furthermore,

29

all of the male employees later identified occupied higher ranking positions, such as vice presidents and branch managers III and IV. There was no discriminatory pay differential.

Finally, plaintiff also claims that her 1991 demotion to bank representative II was motivated by sex discrimination.    In response, defendant has offered evidence that she was demoted for substandard work performance, and plaintiff has offered no evidence disputing that assessment.  Thus, plaintiff has failed to meet her burden of proving the defendant's assertion of poor work performance to be a mere pretext.

Defendant is entitled to summary judgment on all of this plaintiff's claims.


9.  <u>Marilyn Jackson</u> — Plaintiff worked for defendant as a proof operator from April 21 to December 12, 1986, when she resigned.  In August 1986, plaintiff applied for a posted position as a CD/Savings Clerk.  She interviewed for the position and was told she was qualified for it if she could start immediately.  She could not, however, immediately leave her job as a proof operator because she was needed to train her replacement.  When she was

unable to arrange to take the CD/Saving Clerk job immediately, or make arrangements for a transition, it was awarded to another candidate, Randall Duke.

Plaintiff's claim of discriminatory denial of a transfer to the position of CD/Savings Clerk is not supported by the evidence. The undisputed evidence is that she was offered the transfer, but was unable to arrange to leave her job as proof operator as soon as she was needed in the CD/Savings department.  There is no evidence that plaintiff was denied the transfer for discriminatory reasons. Further, there is no evidence that she was the victim of pay discrimination.  The job duties and responsibilities of plaintiff's job as a proof operator were not substantially similar to those of Mr. Duke as a CD/Savings Clerk.  The mere fact that two employees in two different positions were paid dissimilarly does not establish a *prima facie* case of pay discrimination.

Defendant is entitled to summary judgment on all of this plaintiff's claims.


10.   <u>Phyllis Lawson</u> — Plaintiff began working with defendant in March 1976 as a receptionist, soon being transferred to the Loan

31

Servicing Department.  Around 1982, plaintiff was promoted to the position of loan processor.  In the Loan Servicing Department, under the supervision of Ruby Mantooth, plaintiff assisted maintaining escrow records on loans, calculated loan pay-offs, and collected loans, including through foreclosure, that had become delinquent.  When promoted to loan processor, plaintiff's work responsibilities shifted to the preparation of loans for review by the bank's loan committee and, thereafter, for closing.  Plaintiff would receive applications, credit reports, appraisals, and other documentation to be sent to the loan committee for consideration of the loan.  If approved, plaintiff would then contact the borrower and forward the loan file to a closer, who would complete the closing process.  As a loan processor, plaintiff worked under Sheila Curtis and, more indirectly, Don Stroup, the Regional Loan Manager.

Plaintiff points to two particular promotions she claims she was discriminatorily denied: the consumer loan officer position given to Charles Everage in 1982 and the Loan Servicing Manager job

held by Barbara Grimes.[10] As to the former, plaintiff admitted that she never applied for it, but says that she was unaware of the position until after it was filled by Everage. In 1982, plaintiff was experienced in the post-closing administration of mortgage loans, calculating escrows and pay-offs, paying taxes, and collecting delinquencies. She had no experience, however, in soliciting lending business or assessing the risks of approving particular consumer loans. Plaintiff has failed to dispute the affidavit testimony of Cathy Gettys Ogletree to the effect that an essential minimum qualification for the consumer loan officer position was experience in approving the lending of money. Because plaintiff admittedly lacked such experience, she was not minimally qualified for the position and, therefore, failure to give her that promotion was not sex discrimination.

Further, plaintiff complains about not being promoted to the position of Loan Servicing Manager, given to Barbara Grimes. The evidence fails to support a *prima facie* showing of discrimination because the job was awarded to another female, not someone outside

---

[10] There is also mention of denial of a promotion to branch manager, but even plaintiff admitted in her deposition that she was not qualified for that position.

the protected class.  Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989);  Taylor v. Runyon, 175 F.3d 861, 865 (11th Cir. 1999). Although plaintiff attempts to create a fact issue by testifying that a "Tim Graves" also held the position for an unspecified period of time, she has offered no substantial evidence to rebut the testimony of Jack Phillips and Eunie McDavid that defendant's personnel records do not reflect the employment of an individual named "Tim Graves."

Plaintiff also complained that she was discriminatorily denied pay equal to that of Charles Everage, a consumer loan officer; Bev Leigh and John Adams, loan originators/officers; John Marbury, a loan originator; and Tom Allen, a consumer loan coordinator. Again, plaintiff's evidence fails to establish a substantial similarity between her job and those of Everage, Leigh, Adams, Marbury, and Allen.  As already mentioned, Everage was hired as a consumer loan officer and Allen was hired as a consumer loan coordinator, both responsible for soliciting lending business and approving loans up to a limit.  Plaintiff had no loan approval authority or solicitation responsibilities.  Similarly, Leigh,

Adams, and Marbury were required to solicit lending business by making, in effect, sales calls on builders, developers, and realtors, seeking to convince them to use the defendant's lending services. Plaintiff's job of loan processor involved the collection of data for presentation to the loan committee for approval. Because her work was not substantially like that of the identified male comparators, she has failed to make a *prima facie* showing of wage discrimination.

Defendant is entitled to summary judgment on all of plaintiff's claims.

11. <u>Donna LeCroy</u> — Plaintiff was employed as an underwriter for approximately eight months from January 1987 to August 1987, in the defendant's Montgomery office. She occupied a unique position dealing with underwriting of government loans (FHA/VA) for all thirteen of the bank's branch offices. In July 1987, the Montgomery office was closed and merged into the Birmingham underwriting office, which previously dealt only with conventional loans. Plaintiff was informed that she would not be transferred to the Birmingham office. In August 1987, plaintiff saw a posting for

an underwriter in the Birmingham office.  She applied for it and was interviewed by Cathy Gettys, who noted that plaintiff should not be hired for the underwriting position in Birmingham because a number of errors had been discovered in her underwriting work in the Montgomery office.  Ultimately, Beth Thompson Fogarty was hired for the position.

Plaintiff complains that she was discriminatorily denied the transfer to the Birmingham underwriting position.  She cannot, however, make a *prima facie* case of discrimination because a female, not someone outside the protected class, was hired for the position she sought.  Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989);  Taylor v. Runyon, 175 F.3d 861, 865 (11th Cir. 1999).  Further, plaintiff has failed to offer any evidence of pretext for defendant's assertion that she was not transferred due to errors discovered in her earlier underwriting work.  Thus, plaintiff has not rebutted defendant's legitimate, non-discriminatory reason for denying plaintiff the transfer.

Finally, plaintiff also contends that she was discriminatorily denied pay equal to that of Ed Gardiner, the Vice President in

36

charge of the Mortgage Loan Department, and Larry Trice, the Southern Regional Loan Manager. Plainly, both of these male employees occupied higher management positions not comparable to plaintiff's underwriting position. There is no evidence of substantial similarity between plaintiff's job and those of Gardiner and Trice, and, therefore, no *prima facie* showing of wage discrimination.

Defendant is entitled to summary judgment on all of plaintiff's claims.


12. <u>Kelli Martin Leslie</u> — Plaintiff worked for defendant slightly over two years, from January 1983 to February 1985, first as a clerk in the checking account department, then as a teller, and, finally, as a clerk in the loan department. From January 1983 to May 1983, plaintiff worked part-time while still in high school, going to full-time employment upon graduation.

Plaintiff argues that she was discriminatorily denied promotion to the positions of loan processor, loan department supervisor, and opening department supervisor. She concedes, however, that she has no evidence that there even existed an

opening in any of these positions while she was employed by defendant, and that she never informed anyone in management that she was interested in being considered for any such positions. She certainly never applied for any of them. Even if the positions had become open, she can provide no evidence concerning who filled the positions or her qualifications for them. Plaintiff simply has failed to make a *prima facie* showing that she was denied a promotion due to sex discrimination.

Plaintiff also suggests that she was denied pay equal to that of Phillip Holbdy, a loan servicing clerk, James Vinson, a loan clerk, and Percy Phillips, vice president of construction loans. Plaintiff never held any of these positions or any substantially similar to them. Vinson was hired as a temporary summer employee and was paid **less** than plaintiff. Phillips, as vice president of construction loans, had substantially more duties and responsibilities than plaintiff, clearly warranting more pay. Finally, plaintiff's position as a clerk in the loan department entailed general office work, a position she held for only one month before resigning. Phillip Holbdy's job was substantially different in that it required him to maintain contact with realtors

38

and customers, respond to questions and complaints, make tax payments, analyze escrow data, and otherwise assure that a mortgage loan file was processed properly to complete the loan and protect the bank's security position. Because plaintiff's job was substantially different from Holbdy's, she has not made a *prima facie* showing of wage discrimination.

Defendant is entitled to summary judgment on this plaintiff's claims.

13. <u>Nancy J. Martin</u> — Plaintiff was initially employed by defendant as a teller in September 1975. By December 1975, she was promoted to branch manager and remained in that position until she resigned to return to college in 1985. In March 1976, plaintiff was given the additional duties of loan officer while still serving as a branch manager. While holding the title of loan officer, plaintiff acknowledges that she was required to submit loan applications and packages to Percy Phillips for approval, although other branch managers, like Jack Manning, were not required to do so.

Plaintiff asserts a discriminatory denial of promotion claim, arguing that she was denied promotion to the position of consumer loan officer (coordinator) awarded to Percy Phillips in 1978.  The court concludes that there are genuine issues of material fact that preclude summary judgment on this claim.  Further, defendant has failed to carry its initial burden of showing its entitlement to judgment as a matter of law.  As a branch manager, plaintiff appears to have been minimally qualified for the job given to Phillips, and defendant has given no reason why Phillips was hired rather than plaintiff promoted to the position.  She, therefore, has established a *prima facie* showing of discrimination, which has not been rebutted by any legitimate, nondiscriminatory reason articulated by defendant.  Summary judgment on this claim is due to be denied.

Additionally, plaintiff has made a claim of wage discrimination and discrimination in other terms and conditions of employment.  She has pointed out that other branch managers, with no substantially greater job responsibilities, were paid more than she.  Defendant seems to concede that another branch manager, Carlos Presnell, was paid more than plaintiff, but argues that his

40

duties were different from those of plaintiff. There is not an adequate showing of such a difference in duties to warrant summary judgment. Further, plaintiff was made to undertake employment tasks not required of male branch managers, including doing janitorial work at her branch and emptying mouse traps. Defendant is not entitled to judgment as a matter of law on these claims, and summary judgment on plaintiff Martin's claims will be denied.

14. <u>Leda Beard Reynolds Mims</u> — Plaintiff was employed by the defendant slightly more than a year, from June 1983 to October 1984, first as a loan processor and then, in 1984, as a loan originator. Although plaintiff contends that she was discriminatorily denied promotions, she has not identified any particular position she claims she was denied. In the absence of evidence of a specific promotion denied by defendant, the court cannot speculate that plaintiff was denied promotions in the abstract. A qualification for the position sought is an essential element of a *prima facie* showing of discrimination, a showing in the abstract is not sufficient because it does not allow the court to determine whether, in fact, plaintiff was qualified.

41

Qualifications are relevant to specific positions and must be assessed in light of the positions sought.  Defendant is entitled to summary judgment on this claim.

Plaintiff also contends that she was denied a wage equal to that paid to male loan originators.  She has not, however, been able to offer any specific evidence showing that male loan originators were, in fact, paid more than she.  She has no personal knowledge of the rates of compensation paid to male loan originators, nor has she offered any actual pay records to substantiate her assertion of a discriminatory differential.

Defendant is entitled to summary judgment on these claims by the plaintiff.


15.  <u>Pat Nelson</u> — Plaintiff first went to work with defendant's predecessor entity in Mobile in September 1959 as a teller.  Over the years, she was promoted to head teller, assistant bookkeeper, bookkeeper, controller, personnel director, assistant vice president, and finally, vice president in charge of the accounting department in January 1982.  In early 1984, after the merger of the several savings and loan entities to form defendant,

all accounting functions were transferred, first, to Tuscaloosa, and then Birmingham.   This was a consolidation of accounting functions due to the merger.  Plaintiff was not offered a transfer to Tuscaloosa or Birmingham, and did not request one.   She did request transfer to a new position in Mobile, and she was transferred to the loan department as a loan solicitor.   She retained the same compensation she was paid as a vice president, but she lost the vice-president title and certain memberships in civic organizations.  By the end of 1984, however, she was informed that the transfer was not working out and her position as loan solicitor was abolished, effective December 31, 1984.

Following the termination of her employment and with the assistance of an attorney, plaintiff entered into a severance agreement with defendant under which she was paid one month's salary as severance compensation, in return for which she executed the following release:

> That Patricia Ann Nelson hereby releases and forever
> discharges Alabama Federal Savings, its officers, ...,
> from any and all liabilities, for any claim based on or
> relating to her employment and separation of her
> employment from Alabama Federal, or based on or relating
> to any employment policies or practices of Alabama
> Federal, whether based on federal or state constitutional

43

laws, including Fair Labor Standards Act, Title VII of
the Civil Rights Act, the Age Discrimination Employment
Act of 1967, the Employee Retirement Income Security Act
of 1974.  (<u>See</u> Plaintiff's Depo. Pp.76-77).[11]

Plaintiff claims to have been subjected to wage discrimination
and to a discriminatory demotion and loss of perks associated with
the demotion.  Turning first to the demotion claim, plaintiff has
not disputed that, with the consolidation of accounting functions
in Birmingham, her position as vice president in charge of the
accounting department and controller was eliminated due to
restructuring.  She has pointed to no evidence creating a genuine
issue of fact as to whether this was a mere pretext to discriminate
against her.  Absent such evidence, plaintiff has not carried her
burden of establishing intentional discrimination.

Similarly, the loss of perks associated with the vice-
president position, like membership in certain organizations, was
the inevitable result of the restructuring itself.  Because her
position was eliminated, there was no need for the defendant to

---

[11]  Oddly, defendant does not seek summary judgment on the
basis of the release of claims by plaintiff.  Since it is not
raised by defendant, the court will not address it.

continue providing plaintiff with the perks of the position, although it did continue to pay her the same rate of pay even while she worked in the lower position of loan solicitor.

Plaintiff also claims that she was discriminatorily paid less compensation that male employees holding substantially similar positions. Aside from being high-level managers, none of the male comparators identified by plaintiff occupied a position similar to hers. At the outset, the court rejects that notion that high-level managers are somehow fungible, all alike simply because they may hold the same *title*. The job skills, responsibilities, and qualifications of higher level executives are peculiarly unique. To establish a *prima facie* case of wage discrimination among high-level management, there must be a showing of substantial similarity between the job duties, responsibilities, and qualifications of the positions, not merely the titles.

Against that backdrop, plaintiff contends that she was paid less than Larry Trice, Don Stroup, Ray Lambert, James Mathis, Richard Redmon, and Stephen Watkins. At the outset, Lambert was employed only by the predecessor entity that was merged into the defendant in 1982. Lambert resigned his employment with Home

45

Savings in 1981, before the merger occurred.  If, indeed, plaintiff was the victim of wage discrimination in comparison to Lambert, it ended with his resignation, leaving no substantially similar male employee receiving better pay than plaintiff.  It is critical to recall that the class plaintiff opted-out of was expressly comprised of female employees *of defendant* on and after April 23, 1983.  Thus, the focus of the class was alleged discrimination by the defendant, not one of its predecessor entities.  Insofar as plaintiff complains about some discrimination *by a predecessor entity* before that date, she cannot proceed in this action.  By the express terms of the opt-out provisions of the class settlement, only those claims of plaintiffs who were members of the class of defendant's female employees before they opted-out were preserved for litigation in this action.

Male comparators Mathis and Trice were first employed by defendant more than a year after plaintiff's employment ended. Comparisons to these later-hired employees do not make a *prima facie* showing of wage discrimination because it cannot be said that plaintiff and they did substantially similar jobs.  The fact alone that they were never employed by defendant at the same time

46

undercuts any comparison because one cannot logically compare jobs from two different times, particularly higher-level management jobs in a restructuring organization. Employment culture changes and job duties change, preventing a comparison of two positions unless they exist at the same time, within the same organization and employment culture.

Two more male comparators, Richard Redmon, a loan originator, and Stephen Watkins, a loan solicitor, occupied positions substantially similar to the loan solicitor position plaintiff held in 1984. While claiming that they were paid more than she, plaintiff has offered no evidence whatsoever to substantiate that supposition. Indeed, she admitted in her deposition that she continued to be paid the same compensation she was paid as a vice president even after her transfer to loan solicitor. In light of that admission, plaintiff must present evidence that, in fact, Redmon's and Watkins' rate of pay was greater than hers, and this she has not done. She has failed to make the fundamental showing that, in fact, she was the victim of wage discrimination in comparison to these male employees.

47

Finally, plaintiff claims that her position as vice president in charge of accounting was substantially similar to that held by Don Stroup, vice president and loan manager.  Again, however, the mere fact that the two held similar titles does not mean that their work was substantially similar.  While plaintiff was responsible for the accounting department, Stroup ran the mortgage loan department where mortgage-loan business was solicited, underwritten, approved, processed, closed, serviced, and sold on the secondary market.  These are employees in different departments, admittedly performing different jobs.  While both had substantial managerial responsibility, they were different and as comparable as apples and oranges.  As explained, higher-level management executive positions are not fungible; each has its own unique duties and responsibilities.  Absent some evidence establishing a factual similarity of jobs, which is missing here, one cannot say simply that because two employees held the title vice president that their work and responsibilities were substantially similar.

Defendant is entitled to summary judgment on each of plaintiff's claims.

16.   <u>Yolanda Nunley</u> — Plaintiff was first employed with defendant's predecessor entity in 1979 as a teller. She possessed a high school diploma and a four-year degree in business administration. She was promoted to loan serving assistant and then loan processor in subsequent years. In 1986, she applied for a promotion to loan operations manager, was interviewed for it, but was unsuccessful when it was awarded to another woman hired from outside the bank. In 1988, she applied for a promotion to the position of construction loan manager, which was the immediate supervisor over her position as loan processor. While not formally interviewed, she spoke to Jack Manning about the position, which was ultimately awarded to Gerald Player.

Plaintiff complains that she was discriminatorily denied promotion to the two positions of loan operations manager in 1986 and construction loan manager in 1988. On the former position, it is clear plaintiff cannot establish a *prima facie* case because the person hired over her to take the job was also a woman. To state a *prima facie* case of sex discrimination, one of the elements plaintiff must show is that the job she sought was given to someone not with the protected class of women. <u>Wu v. Thomas</u>, 847 F.2d

49

1480, 1483 (11th Cir. 1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989); Taylor v. Runyon, 175 F.3d 861, 865 (11th Cir. 1999). Thus, her claim relating to the loan operations manager fails.

Likewise, plaintiff has failed to offer any evidence that the defendant's articulated nondiscriminatory reason for hiring Gerald Player — that he was the better qualified candidate — is mere pretext. Clearly, plaintiff was minimally qualified for the position based on her college degree and years of experience as a loan processor dealing with construction loans. Defendant asserts, however, that Player was hired not because of discrimination against plaintiff, but because he was perceived as the better qualified applicant. Player has seven more years of banking experience, had performed construction inspections, and had supervised employees as a branch manager. Also, he had not only a banking degree, but a graduate degree as well from Rutgers. On the other hand, plaintiff's qualifications were viewed as lacking in certain areas. Penny Billings wrote regarding plaintiff's application, "Applicant did not have credit analysis experience or knowledge of construction practices for inspection. Possessed good

50

technical skills of documentation received." This evidence presents the bank's articulated, nondiscriminatory reason for choosing Player over plaintiff for the construction loan manager position, and plaintiff has offered no evidence tending to show that this is mere pretext. When the employer has proffered a nondiscriminatory reason for its action, the plaintiff must offer evidence to "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct'...." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). That, plaintiff has not done here.

Finally, plaintiff also asserts a claim for wage discrimination, but has failed even to identify any male employees she contends performed substantially similar jobs and were paid more than she. Without some evidence of an actual wage disparity, plaintiff has not made out a *prima facie* case of wage discrimination.

Defendant is entitled to summary judgment on each of plaintiff's claims.

51

17.  <u>Carolyn Pate</u> — Plaintiff began working for defendant in March 1961 as a teller.  She was promoted over the years, reaching the position of assistant vice president in charge of the checking account department before being terminated involuntarily in June 1986.  She claims that she was discriminatorily denied a promotion in January 1986 to the position of vice president over the consumer loan department in Mobile, and that she was discriminatorily paid less than Jerry Brooks, who was hired to be vice president over consumer loans, and Don Stroup, vice president and manager of the mortgage loan department in Mobile.

At the time Brooks was hired to be vice president in charge of consumer loans, plaintiff was an assistant vice president in the checking account department.  Her duties included balancing checking accounts, internal auditing, reviewing and approving overdraft reports, and general customer relations concerning checking accounts.  While she had previously worked in the mortgage loan department receiving loan applications and processing them for presentation to the loan committee, she had no experience analyzing loan risk or in approving loans.  By comparison, Brooks was a 1983 graduate of the Alabama Banking School at the University of South

Alabama, although he had worked as an assistant vice president and branch manager at a competitor bank for over 12 years.  His banking experience included "experience in all types of loans — consumer (secured and unsecured), single pay and installment; real estate and mortgage loans; business and commercial loans; new and used car loans; lines of credit loans; charge cards and check credit."

While plaintiff has presented sufficient evidence to make a *prima facie* showing of discrimination, the defendant has articulated the legitimate, nondiscriminatory reason for hiring Brooks over promoting plaintiff - that he was better qualified, with more experience in lending.  Plaintiff has not proffered any evidence undermining the credibility of this proffered reason or creating a genuine issue whether it is mere pretext.  When the employer has articulated a nondiscriminatory reason for its action, the plaintiff must offer evidence to "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct'...."  Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).  That, plaintiff has not done here.

53

Plaintiff also claims that she was paid less than Jerry Brooks and Don Stroup due to sex discrimination.  She concedes that Brooks and Stroup both were vice presidents, one rung higher in the corporate hierarchy than she, and indeed, that she sought the job awarded to Brooks as a *promotion*.  Brooks and Stroup were responsible, respectively, for the bank's Southern Regional consumer and mortgage loan operations, requiring them to solicit lending business, oversee the processing, underwriting, and closing of the loans, as well as post-closing servicing of the loans. Their work and responsibilities were not substantially similar to those of plaintiff, and she has failed to make a *prima facie* showing of wage discrimination.

Defendant is entitled to summary judgment on all of plaintiff's claims.


18.  <u>Laura Posey</u> — Plaintiff was first employed by defendant in January 1987 as a branch manager at the Whitesburg branch in Huntsville, Alabama.  Her starting salary was $18,000 per year, eventually being raised to $20,000 upon transfer to the position of branch manager for the Huntsville main branch of the bank.  She

voluntarily resigned in May 1990, to open her own business. She claims that she was twice discriminatorily denied promotion to the position of consumer loan coordinator in Huntsville and that she was discriminatorily denied pay equal to that paid male branch managers.

Plaintiff twice applied for promotion to the position of consumer loan coordinator, first in June 1989 and again in December 1989. On the first occasion, she was interviewed by Northern Regional Manager Penny Billings, but the position was awarded to Gerald Player, who was employed by the bank as the construction loan manager. When Player left the job, plaintiff applied a second time and was interviewed by Mike Peare in Birmingham. The position was given to Paul Eckley, who was a new hire from outside the bank.

Plaintiff has made a *prima facie* case by showing that she was qualified for the position, sought it, and it was twice given to males. Prior to working for defendant, plaintiff had worked as an assistant manager and manager of the TVA Brown's Ferry Credit Union, where she had lending authority and several lending employees she supervised. Further, she had been working for defendant as a branch manager for over two years.

55

Defendant has articulated as a legitimate, nondiscriminatory reason for not hiring plaintiff that Penny Billings believed that plaintiff lacked experience supervising lending officers and that she did not have a proven track record of business development. There is evidence, however, contradicting this assertion. First, plaintiff's resume makes clear that, indeed, while employed with the credit union, she did supervise employees with lending authority. Because this is reflected in plaintiff's resume, and there is no reason to believe that Billings was not familiar with it, there is reason to disbelieve this stated reason. Further, plaintiff testified in deposition that, upon her resignation from defendant's employment, Billings told her that she was the most creative person she had ever known. This testimony suggests that Billings was aware of plaintiff's efforts as a branch manager to develop new business. Finally, there also is evidence of differential treatment of plaintiff and a male candidate for the position during the interview process. Plaintiff was not even interviewed by Billings on the second occasion she sought the promotion, but was sent to Birmingham to be interviewed by Mike Peare. The next day, however, Peare drove to Huntsville to

56

interview the male candidate, Paul Eckley, who ultimately was given the job.   There is sufficient evidence to warrant a trial on this claim.

Plaintiff also claims that male branch managers, Ken Long, Mike King, and Jim Ross were all paid more than she, even though their duties was substantially similar.   The evidence appears to be without dispute that when plaintiff was hired as a branch manager in 1987, her starting pay was $18,000, and that even as a branch manager III, her pay never exceeded $22,000.   On the other hand, when Ken Long was hired in 1985 as a branch manager in Dothan, his starting pay was $27,000.   While plaintiff also complains that King and Ross were paid more than she, the record contains no evidence concerning their actual compensation, so the court has no way of knowing whether, in fact, they were paid more.   Nonetheless, the evidence of a wage disparity between plaintiff and Long, especially such a larger disparity, raises an inference of discrimination. Defendant has offered no real reason why the compensation gap between two branch managers would be so great.   Defendant is not entitled to summary judgment on this claim.

57

Defendant's motion for summary judgment on plaintiff Posy's claims will be denied.


19.   <u>Rachel Alice Shaneyfelt</u> — Plaintiff was employed by defendant as a loan servicing clerk from July 1986 to November 1987.  Her starting pay was $9,600 per year, being raised to $9,900 per year on January 1, 1987.  Plaintiff claims she was the victim of discrimination when she was denied a promotion to senior escrow clerk in November 1987, and that she was the vicrtim of wage discrimination because another loan servicing clerk, Phillip Holbdy, was paid more than she for substantially similar work.

Plaintiff's promotion claim fails to make a *prima facie* showing.  Although plaintiff was denied an interview for the senior escrow clerk position, a woman ultimately was hired to fill the job.  An essential element of a *prima facie* case of discrimination is that someone not in the protected class be given the job sought by plaintiff.  <u>Wu v. Thomas</u>, 847 F.2d 1480, 1483 (11th Cir. 1988), <u>cert</u>. <u>denied</u>, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989); <u>Taylor v. Runyon</u>, 175 F.3d 861, 865 (11th Cir. 1999).  Because a woman was given this job, plaintiff's claim fails.

58

It appears to be undisputed that plaintiff and Holbdy held the same class of job, loan servicing clerk, and performed substantially similar work. Defendant asserts that Holbdy was paid more, $10,200 to start, because he came to the job with two and a half years of prior banking experience at a competitor bank, whereas plaintiff had no prior banking experience. Because of his prior experience, Holbdy simply was viewed as worth more as an employee. Plaintiff has offered no evidence to create a genuine issue of fact concerning this justification based on greater job experience. Plaintiff and Holbdy, although performing the same job, were not similarly situated for pay purposes because he had greater experience. Without some evidence that, in fact, Holbdy's greater prior experience made no difference in defendant's pay decisions, plaintiff has failed to rebut defendant's claim that the wage differential was due to legitimate, not discriminatory, concerns.

Defendant is entitled to summary judgment on plaintiff's claims.

20.   <u>Lil Evelyn Skelton</u> — Plaintiff first went to work for defendant as a branch manager on December 16, 1985, at the Hoover branch.  She was involuntarily terminated on July 30, 1986, for violation of cash-drawer policies and indirect participation in filing a fraudulent teller blotter.  Her starting pay was $23,000 per year.  Plaintiff claims to have been discriminatorily denied a promotion to regional branch manager and to have been discriminatorily paid less that comparable male branch managers Ken Long, Mike King, and Jim Ross.

This plaintiff's claims are due to be dismissed for failure to comply with the claim procedure set forth in the original consent decree with addendum.   In an addendum to the consent decree, entered February 23, 1988, (Doc. No. 99), the district court outlined the opt-out and claim procedures to be utilized by plaintiffs wishing to pursue their claims.   Paragraph B expressly mandated:

> That all members of the class who have previously filed with the Clerk the referenced opt-out form, and any future class member who files an opt-out form by May 1, 1988, must file any claim that they have relating to the subject matter of this cause with the Clerk of this court in these proceedings on or prior to May 1, 1988, and *upon failure to do so their claims shall be barred and*

60

> *forfeited, in accordance with the terms and provisions of this Decree.*  Any class member desiring to opt-out, or who previously filed opt-out forms, must file any claim they may have relating to the subject matter of this cause, with the Clerk of this Court in these proceedings on or prior to May 1, 1988.  (Italics added).

<u>Addendum to Consent Decree</u>, filed February 23, 1988.  Unlike the other 31 plaintiffs who filed their timely statements of claim before May 1, 1988, plaintiff Skelton apparently did not. Defendant states that it is unaware of any statement of claim filed by this plaintiff until 1996, and plaintiff has offered no evidence to show that she did indeed file a timely statement of claim before May 1, 1988.  The court has carefully reviewed the court file and, while finding the claims of the remaining opt-out plaintiffs, it has been unable to find a statement of claim filed for plaintiff Skelton on or before May 1, 1988.

The only procedure through which plaintiffs could present their individual claims of sex discrimination was that outlined by the court in the consent decree and addendum.  None of these plaintiffs filed an EEOC charge of discrimination, none received a right to sue letter, none filed an individual suit.  What allows them to be in court today is the opt-out and claim procedure

61

growing out of the class settlement.   Thus, to maintain their claims, they were required to follow those procedures, one of which required the filing of claims by May 1, 1988.  Failing that, their claims would be "barred and forfeited" in accordance with the consent decree and addendum.

Therefore, because plaintiff Skelton did not file a statement of claim with the court on or before May 1, 1988, her claims have been "barred and forfeited."   Defendant is entitled to summary judgment with respect to all claims now asserted by her.


21.   <u>Meredith Moody Smith</u> — Plaintiff first went to work for defendant's predecessor, Home Federal, in June 1969 as a teller. She was promoted to assistant branch manager in August 1974 and then to branch manager of the Eastwood branch in January 1977.   In 1984, she was promoted to assistant vice president before resigning from defendant's employment in 1985 to take a position with a competitor bank.

Plaintiff   complains   in   this   action   that   she   was discriminatorily denied promotion to a branch manager's position on several occasions before being finally promoted in 1977 and that,

when promoted to branch manager, she was discriminatorily paid less than similar male branch managers.   In particular, she complains that she should have received a promotion to branch manager on the various occasions on which Mike Boyd, Al Simmons, Don Stroup, Jim Ross, and Carlos Presnell were hired as branch managers.  Likewise, she asserts that, once promoted to branch manager, she was paid less than similarly situated branch managers like Ronny Hudspeth, Mike Boyd, Jim Ross, and Carlos Presnell.   She makes no other complaints about promotions or wage discrimination in any other positions she held.

There are genuine issues of fact that preclude summary judgment on these claims.  Plaintiff has made a *prima facie* showing of discriminatory denial of promotion by pointing out that between 1971 and her promotion to branch manager in 1977, she was qualified for the position, yet several males were hired as branch managers with less banking experience than she.  For example, Mike Boyd was hired as a branch manager in 1971, although he apparently had no banking experience.  While true that plaintiff did not apply for these openings, it is clear that the defendant did not post them or

63

otherwise make them known to employees.  Thus, plaintiff had no opportunity to apply for them before males were hired to fill them.

Furthermore, defendant has failed to carry its initial summary judgment burden of showing its entitlement to judgment as a matter of law.  It has not shown that plaintiff was not qualified for the position of branch manager or that the several males hired before she was promoted possessed superior qualifications.  The court cannot say that defendant is entitled to judgment as a matter of law on this promotion claim.

Likewise, defendant concedes that several male branch managers were paid more than plaintiff, but contends that this was due to the fact that they were "Remote Branch Managers."  The court is not persuaded that defendant has shown that the position of remote branch manager was substantially different from the branch manager position held by plaintiff.  Because there are genuine issues of fact concerning the similarity of branch manager positions, defendant is not entitled to summary judgment on this claim.

Defendant's motion for summary judgment will be denied as to plaintiff Smith's claims.

64

22.   <u>Shirley Steadham</u> — This plaintiff was employed by defendant for only four months between February 1987 to June 1987, as a receptionist/secretary. She was laid off in a reduction in force in June 1987. When informed of the lay-off, she did not ask for a transfer or otherwise inquire about other openings she might fill.

Plaintiff has wholly failed to make out a *prima facie* case of discrimination. While she contends that women were laid off while men were being hired, she has not identified any such women (other than herself) or any men hired into positions vacated by laid-off women. She can offer nothing but unsubstantiated personal opinion in support of her claim. When asked in deposition about her claim of wage discrimination, her response was:

Q.   What males do you claim were paid more than you for the same work.

A.   Well, they didn't have a male receptionist, but I'm sure if they did, he'd been paid more.

This completely fails to establish a factual basis on which a reasonable factfinder could conclude that she was discriminatorily denied an equal wage on the basis of her sex.

65

Defendant is entitled to summary judgment on plaintiff's claims.

23.   <u>Shirley Williams</u> — Plaintiff first went to work for defendant in August 1976[12] in the loan processing department. She was laterally transferred into the loan servicing department at some point before being terminated in February 1985 due to overdrafts on her employee checking account. Plaintiff claims that she was discriminatorily denied a promotion to the positions of loan officer and Bessemer branch manager, positions given respectively to Ronnie Roberts and John Alexander. Further, she asserts that she was discriminatorily denied pay equal to that paid to Tom Allen, John Alexander, and Ronnie Roberts.

Ronnie Roberts was hired as a loan officer in April 1977, less than nine months after plaintiff started work as a loan processor. Defendant has offered no evidence concerning the comparative qualifications of plaintiff and Roberts, so the court cannot say as a matter of law that plaintiff was unqualified for the position of

---

[12]   Although plaintiff testified that she started work in August 1976, employment records put the date as April 20, 1977. The court will accept plaintiff's assertion of the 1976 date.

loan officer or that Roberts was superiorly qualified.  Similarly,
although it is clear that plaintiff had little or no experience in
supervising tellers, opening accounts, or receiving deposits that
would qualify her for a branch manager's job, the evidence also
suggests the John Alexander also lacked that experience when he was
hired to be the Bessemer branch manager.   Plaintiff's loan
processing experience would have been of some value toward
qualification as a branch manager, so she would appear to be
minimally qualified or, at least based on the evidence now before
the court, as qualified as Alexander for the post.   Thus, with
regard to plaintiff's claims for denial of promotion, defendant's
motion is due to be denied.

Plaintiff's claim for discriminatory denial of an equal wage
stands on a different footing.  She compares herself to three male
former employees, Tom Allen, John Alexander, and Ronnie Roberts,
though she admitted in deposition that her duties were different
from theirs.  As mentioned, Ronnie Roberts was s loan officer and
John Alexander was a branch manager.  Tom Allen was employed as a
consumer loan manager.  Because there was no substantial similarity
in the work they and plaintiff performed, there is no *prima facie*

67

showing of wage discrimination, and defendant is entitled to summary judgment on this wage claim.

24.  <u>Carol Manning Woodruff</u> — Plaintiff was hired in 1972 as an office stenographer and savings counselor at an annual salary of $3,840.  Within one to two years, she was promoted to the position of secretary to the president of defendant's predecessor entity, Heritage Federal in Tuscaloosa.  Eventually she rose to executive secretary to the president and chairman of the board, and then to corporate secretary prior to the April 1982 merger that created defendant Alabama Federal.[13] At the time of the merger, Ernest Todd replaced plaintiff as corporate secretary and she became assistant corporate secretary and personnel officer in Tuscaloosa. Eventually, she was again promoted to corporate secretary, but in July 1984, a time when corporate offices were being consolidated and transferred to Birmingham, she was informed that her employment was being terminated.

---

[13]  Alabama Federal Savings and Loan Association was created in April 1982 by the merger of four separate savings and loan associations, Home Savings in Mobile, Home Federal Savings in Mobile, Heritage Savings in Tuscaloosa, and Security Federal in Huntsville. <u>See</u> Affidavit of Jack Phillips.

Following her termination, plaintiff inquired about distribution of her profit-sharing funds and severance pay. On August 31, 1984, she and the defendant reached an agreement under which she was paid a $3,333.36 severance package in return for releasing any and all claims against defendant. That release provided in part:

> In consideration of the payments herein the undersigned hereby releases, discharges, and waives any and all claims she has or might have against the Association, growing out of or relating to her employment as an Employee and as a corporate officer, and the Association does hereby release, waive and discharge any and all claims it has against the Employee, growing out of or relating to her employment with the Association.

It seems odd, but defendant does not seek summary judgment on the basis of the release of claims by plaintiff. Since it is not raised by defendant, the court will not address it.

Plaintiff advances two claims: (1) that she was discriminatorily denied the opportunity to transfer from Tuscaloosa to a corporate position in Birmingham when the functions of the association began to be consolidated in Birmingham after the merger, and (2) that she was discriminatorily paid less than

69

several male employees with similar or less employment responsibilities.  She has attempted to argue two other claims, that she was denied the position of corporate secretary after the merger and that women were subjected to a sexually-hostile and discriminatory work environment because they were required to serve coffee to male employees and plan menus for bank functions.  These latter two claims were not asserted in either plaintiff's 1988 or 1996 statement of claims, both of which specifically asserted the denial-of-transfer and wage-discrimination claims.

Plaintiff's claims relating to the corporate secretary position and the hostile work environment[14] are due to be dismissed for failure to comply with the claim procedure set forth in the original consent decree with addendum.  In an addendum to the consent decree, entered February 23, 1988, (Doc. No. 99), the district court outlined the opt-out and claim procedures to be

---

[14]  In addition to the ground for dismissal explained above in text, it appears that plaintiff's hostile work environment claim is due to be dismissed also because she has not show any injury in fact.  While she asserts that female employees were required to wear uniforms, make and serve coffee to male employees, and prepare menus for bank functions, she never testified in deposition, interrogatory answers, or otherwise, that she was required to do any of these things.

utilized by plaintiffs wishing to pursue their claims.  It was only within the scope of these prescribed procedures that any claims were preserved for later resolution.    Paragraph B expressly mandated:

> That all members of the class who have previously filed with the Clerk the referenced opt-out form, and any future class member who files an opt-out form by May 1, 1988, must file any claim that they have relating to the subject matter of this cause with the Clerk of this court in these proceedings on or prior to May 1, 1988, and *upon failure to do so their claims shall be barred and forfeited, in accordance with the terms and provisions of this Decree*.  Any class member desiring to opt-out, or who previously filed opt-out forms, must file any claim they may have relating to the subject matter of this cause, with the Clerk of this Court in these proceedings on or prior to May 1, 1988.  (Italics added).

Addendum to Consent Decree, filed February 23, 1988. Because these claims were not asserted in the 1988 statement of claim, they are "forfeited and barred."

There are genuine issues of material fact that preclude summary judgment on plaintiff's denial-of-transfer claim.  Although it might be argued that the denial-of-transfer claim is nothing more than a disguised termination claim, which the court has found previously to be beyond the scope of claims preserved by the

71

consent degree (see Court's Order of March 27, 1998), it is not possible to discern from this record whether plaintiff was terminated only because she was not transferred, or was not transferred because she was going to be terminated.  It may seem like legal hair-splitting, but the difference is significant.  If plaintiff was going to be terminated regardless of whether she would be transferred, it is nothing more than a barred termination claim.  On the other hand, if she were first discriminatorily denied a transfer, and only then terminated because there remained no job for her to fill in Tuscaloosa, the denial of a transfer stands as an actionable event separate from the termination.  She points out that a number of comparably ranked male corporate officers were transferred to Birmingham from Tuscaloosa after the merger, while she not only was not offered a transfer, but was summarily terminated.  Defendant has said only that plaintiff did not request a transfer.  That assertion is disputed by plaintiff, who contends that she asked about a transfer after she was unexpectedly terminated.  Because it is not possible on this record to tell whether the denial of transfer caused the termination or

was merely the result of it, defendant is not entitled to summary judgment on this claim.

Likewise, there are genuine issues of material fact that preclude summary judgment on plaintiff's wage discrimination claims. She asserts three instances of wage discrimination: while she was an office stenographer/savings counselor in 1972-73, while she was corporate secretary in 1981 to 1984, and while she was Western Division personnel officer in 1983-84. In the first instance, plaintiff claims that comparable male employees Pearce Pratt and George Youngson were paid more than she for similar work. Viewing the evidence favorably to the plaintiff, a reasonable fact-finder could conclude that she was a victim of wage discrimination. While there is no evidence concerning the work or pay of Pratt (whom defendant contends was never employed by it), there is evidence that plaintiff was the victim of discrimination when compared to Youngson. Although he was hired as a management trainee in 1977 at an annual salary of $9,600, plaintiff asserts that Youngson's first job was as a savings counselor, like she had held a few years earlier, for which she was paid almost two-thirds less than he. There are issues of fact regarding his job

73

assignment and responsibilities, and these issues preclude summary judgment.

Plaintiff also compares herself to Owen Skinner and Ernest Todd to establish that, as corporate secretary, she was paid less than these gentlemen. While testifying that Ernest Todd became corporate secretary at the time of the merger (when she became assistant corporate secretary), she also admitted that he served simultaneously as vice president of the Southern Region of the bank. Plainly, Todd had more job responsibilities that plaintiff because he occupied, according to plaintiff, two corporate positions. As for Owen Skinner, he served as corporate secretary and personnel officer from July 1977 to January 1979, when his title became Vice President and Corporate Secretary. A little over a year later, in April 1980, Skinner resigned to pursue other employment opportunities. Plaintiff became corporate secretary in 1981. The evidence shows that Skinner was paid between $17,000 and $19,300 while he was corporate secretary. (See Tab 32-I of Defendant's Exhibits). On the other hand, plaintiff was paid only $13,500 per year when she became corporate secretary in 1981, only one year after Skinner left. Because the evidence leaves this

74

differential unexplained, this particular claim of wage discrimination cannot be dismissed as a matter of law.

In the third instance of claimed wage discrimination, plaintiff compares herself to James Green in order to establish a *prima facie* showing of wage discrimination while she was the Western Division personnel officer from July 1983 to the end of her employment in July 1984. Plaintiff has not disputed defendant's evidence that Green held the position of vice president for public relations from 1973 to 1987, when he became a compliance officer. There is no evidence that he ever held the position of personnel director or that his job duties were substantially similar to those of plaintiff's while she was Western Division personnel officer. There simply is no evidence from which a reasonable fact-finder could conclude that plaintiff was paid less than Green for substantially similar work. This particular claim of wage discrimination fails.

Defendant's motion for summary judgment will be denied as to this plaintiff's claims of denial of a transfer and wage discrimination, but will be granted as to her remaining claims.

75

### Remaining Plaintiffs

The court concludes that there are genuine issues of fact that preclude summary judgment against the remaining plaintiffs: Gail C. Figg, Joan Lacy Gargus, Mary Hill, Alys G. Liddy, Sharon Wayne McQueen, Jean Bryant Piersol, Kathryn D. Robertson, and Betty Hodges Putman. All of these plaintiffs, with the exception of Mary Hill, have submitted affidavits in opposition to the motion for summary judgment which are sufficient to create genuine fact issues precluding summary judgment. Fact issues were created with respect to Mary Hill's claims in affidavits submitted by the other plaintiffs. Thus, defendant's motion for summary judgment will be denied as to the claims of these plaintiffs.

### Conclusion

By separate order the court will order the following:

1. Summary judgment will be GRANTED in favor of the defendant and against all claims asserted by plaintiffs Marion Calvo, Sherry Diane Cobble, Rosalind Dowdell Coleman, Jeanette Dorminey, Brenda Gail Estes Cole, Donna F. Gillespie Hatoway, Beverly Iturbe, Marilyn Jackson, Phyllis Lawson, Donna LeCroy, Kelli Leslie, Leda

B. Reynolds Mims, Pat Nelson, Yolanda Nunley, Carolyn Pate, Laura H. Posey, Rachel Alice Shanyfelt, Lil Skelton, and Shirley Steadham.

2.   Summary judgment will be GRANTED IN PART as to plaintiff Shirley Williams' claim of wage discrimination, but denied as to her claim of discriminatory denial of a promotion.

3.   Summary judgment will be GRANTED IN PART as to plaintiff Carol Manning Woodruff's claims for denial of promotion to the position of corporate secretary at the time of the merger and for discriminatorily hostile work environment, but DENIED as to her claims of discriminatory denial of a transfer to Birmingham and wage discrimination.

4.   Summary judgment will be DENIED as to the claims of plaintiffs Gail Figg, Joan Lacy Gargus, Dorothy Gurley, Mary Hill, Alys G. Liddy, Nancy J. Martin, Sharon Waine McQueen, Jean Bryant Piersol, Betty Hodges Putman, Kathryn Robertson, and Meredith Moody Smith.

The Clerk is DIRECTED to forward a copy of this Memorandum Opinion to all counsel of record.

DONE this _____ day of March, 2000.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE